**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LIBERTY MUTUAL INSURANCE CO.** | : | |
| Plaintiff | : | |
| v. | : | 3:CV-05-0253 |
| | : | (JUDGE VANASKIE) |
| **MUSKIN LEISURE PRODUCTS, INC.,** | : | |
| n/ka Zodiac American Pools, Inc., a | : | |
| Delaware Corporation | : | |
| Defendant | : | |

## **MEMORANDUM**

Plaintiff Liberty Mutual Insurance Company ("Liberty") commenced this action to recover "retrospective premiums" allegedly owed by Defendant Muskin Leisure Products Inc. ("Muskin") under a series of workers' compensation policies. (Dkt. Entry 1.) Liberty has moved for summary judgment, asserting that the undisputed material facts compel the conclusion that Muskin breached the policies by refusing to pay retrospective premiums due. (Dkt. Entry 62.) Liberty asserts that the undisputed facts show that it is owed $149,574. Muskin counters by asserting that summary judgment is inappropriate because the material provisions of the workers' compensation policies are ambiguous. (Dkt. Entry 69.) Muskin also argues that Liberty has failed to present competent evidence sufficient to support its claim that the amount owed is $149,574. Muskin's latter contention is persuasive. Although it is apparent that Liberty may make "retrospective premium" charges on the policies in question, Liberty has not presented competent evidence to support its claim for the damages it seeks under the policies.

Accordingly, Liberty's motion for summary judgment will be denied.

## I. BACKGROUND

### A. Factual Background[1]

Liberty provided workers' compensation insurance coverage to Muskin from October 1994 until October 2000 pursuant to eight insurance policies.  (Def.'s Response to Unfiled Statement of Undisputed Material Facts ("Def's S.M.F.") (Dkt. Entry 68) at 1.)  Seven of the eight insurance policies operated on a retrospective premium basis.[2]  (Id.)  The basic premise of a retrospective premium policy is that an insured's premium is calculated after coverage is completed using actual claim information.  As explained by Our Court of Appeals:

---

[1]  Liberty failed to accompany its motion for summary judgment with a "separate, short and concise statement of the material facts . . . as to which the moving party contends there is no genuine issue to be tried," as required by Local Rule 56.1.  Muskin is to be commended for nonetheless filing a "Response to Unfiled Statement of Undisputed Material Facts," identifying those facts conceded to be undisputed and those facts that it contends are contested.  (Dkt. Entry 68.)  As Liberty's motion is based largely upon written policies of insurance, the policy terms provide much of the "facts" necessary to an adjudication of the parties' dispute.

[2]  Liberty initially issued a one-year policy that provided workers' compensation insurance and employers' liability insurance in Illinois and Pennsylvania from October 29, 1994 to October 29, 1995  (policy number WC2-131-454679-014).  (Pl.'s Compl. Ex. A1 (Dkt. Entry 1).)  Subsequent annual policies provided similar coverage in Illinois and Pennsylvania beginning on October 29, 1995 (WC2-131-454679-015), in Pennsylvania beginning on October 29, 1996 (WC2-131-454679-016), in Pennsylvania beginning on October 29, 1997 (WC2-131-454679-017), in Illinois beginning on October 29, 1997 (WC2-131-454679-027), in Pennsylvania beginning on October 29, 1998 (WC2-131-454679-018), in Illinois beginning on October 29, 1998 (WC2-131-454679-028), and in Georgia and Pennsylvania beginning on October 29, 1999 (WC2-131-454679-019).  (Pl.'s Compl. Exs. A2-A8 (Dkt. Entry 1).)  This last policy (WC2-131-454679-019) was the only policy that was not operated on a retrospective premium basis.  (Def.'s S.M.F. at 1; see also Pl.'s Compl. Collective Ex. B (Dkt. Entry 1.))

> A retrospective premium policy, unlike a standard insurance policy, provides for retrospective determination of the insured's premium obligations according to a formula based on the cost of claims actually paid by the insurer under the policy. A standard workmen's compensation policy requires payment of a fixed premium, which may be calculated in part with reference to the insured's past losses; under a retrospective premium policy, the premium varies according to current, rather than historical, experience. The retrospective policy establishes minimum and maximum premiums to be paid, and it states the standard premium that would be charged under an equivalent standard policy. The minimum is computed as a fraction of the standard premium.

Alexander & Alexander, Inc. v. Rose, 671 F.2d 771, 773 (3d Cir. 1982).

According to Liberty, Muskin owes $149,574 in retrospective premiums.[3] The majority of this amount is related to annual retrospective premium and dividend adjustments made in 2003, 2004, and 2005 to the policy that provided Muskin with workers' compensation insurance and employers' liability insurance from October 29, 1994 to October 29, 1995 (policy number WC2-131-454679-014) (the "1994 Policy"). (See Aff. of Colette Viola Ex. 2 (Dkt. Entry 63-3).[4])

---

[3] When Liberty initiated this matter on February 4, 2005, it sought $102,762 in unpaid premiums. (Compl. (Dkt. Entry 1) ¶ 14.) In its amended complaint filed on June 2, 2005, Liberty claimed Muskin owed it $168,165 based on the "Tenth Retrospective Adjustment" of $65,403, made to policy number WC2-131-454679-014 in April 2005. (Am. Compl. Ex. A (Dkt. Entry 35).) An "Eleventh Retrospective Adjustment" was made to policy number WC2-131-454679-014 on May 1, 2006, which reduced Muskin's outstanding payment by $18,591 to $149,574. (See Pl.'s Mot. Summ. J. (Dkt. Entry 62) ¶ 3; Aff. of Colette Viola Ex. 2 (Dkt. Entry 63-3).) The parties have not submitted evidence of any adjustments since May 1, 2006.

[4] For reasons that are not entirely clear, Liberty uses slightly different policy numbers to identify policies in its account statements. (See Aff. of Colette Viola (Dkt. Entry 63-3) ¶ 7.) For instance, the 1994 Policy (policy number WC2-131-454679-014) is identified in the account statement as WC2-131-454679-*0194*. (See id. (emphasis added).) Liberty, however, has not

The adjustments to the 1994 Policy appear to be primarily related to a workers' compensation claim by an employee for a back injury in 1995.[5]  (See Aff. of Howard French (Dkt. Entry 66-2) at 34-36.)  Other than providing a summary account statement, however, Liberty has not presented any competent evidence as to how the retrospective premium adjustments were calculated.  Muskin denies it owes Liberty money under the policies.

**B.  Procedural Background**

Liberty initiated this action by filing a complaint on February 4, 2005.  (Dkt. Entry 1.)  Liberty amended the complaint on June 2, 2005, asserting claims for breach of contract (Count I) and *quantum meruit* (Count II).  (Dkt. Entry 35.)  Muskin filed a two-count counterclaim, seeking declaratory judgment (Count I) and claiming Liberty acted in bad faith under 43 Pa. Cons. Stat. § 8371 (Count II).  (Dkt. Entry 28.)  The Court dismissed Liberty's bad faith counterclaim on September 13, 2006.  (Dkt. Entry 72.)

On May 31, 2006, Liberty moved for summary judgment on its breach of contract claim.  (Dkt. Entry 62).  Muskin contends that summary judgment is inappropriate because Liberty has

---

identified which policies are associated with the other policies listed in the account statement. (See Statement of Account, Aff. of Colette Viola ex. 2 (Dkt. Entry 63-3) (listing amounts owed under policies WC1-131-454679-013, WC1-131-454679-0192, WC1-131-454679-0193, WC1-131-454679-0199 without further identifying the policies).)

[5]  Muskin's corporate representative claims that Liberty did not properly handle the employee's claim, (see Aff. of Howard French (Dkt. Entry 66-2) at 34-36), though Muskin did not further pursue this point in its brief in opposition to Liberty's motion for summary judgment.

failed to present sufficient evidence that Liberty: (1) may retrospectively adjust premiums and dividends indefinitely under the 1994 Policy, and (2) is due the amount it seeks.  (Def.'s Br. Opp. (Dkt. Entry 69) at 4-9.)  Liberty claims that Muskin is precluded from challenging the 1994 Policy's retrospective premium because Muskin did not ask the Pennsylvania's Compensation Rating Bureau to determine the validity of the retrospective premium charges.  (Pl.'s Mot. Summ. J. (Dkt. Entry 62) ¶ 8.)

## II.  DISCUSSION

### A.  Summary Judgment Standard

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  FED. R. CIV. P. 56©).  A fact is "material" if proof of its existence or non-existence might affect the outcome of the suit under applicable law.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).  "Facts that could alter the outcome are material facts."  Charlton v. Paramus Bd. of Educ., 25 F.3d 194, 197 (3d Cir. 1994).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson, 477 U.S. at 248.

Initially, the moving party must show the absence of a genuine issue concerning any material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  All doubts as to the

existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. White v. Westinghouse Elec. Co., 862 F.2d 56, 59 (3d Cir. 1988). Once the moving party has satisfied its burden, the nonmoving party "must present affirmative evidence in order to defeat a properly supported motion for summary judgment." Anderson, 477 U.S. at 257. Mere conclusory allegations or denials taken from the pleadings are insufficient to withstand a motion for summary judgment once the moving party has presented evidentiary materials. Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990). Rule 56 requires the entry of summary judgment if there was adequate time for discovery and a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

### B. Whether Muskin is Barred from Challenging the Retrospective Premium Policy

Liberty argues that Muskin is barred from challenging the 1994 Policy's retrospective premium and dividend adjustments because Muskin did not pursue an objection to the policy before the Pennsylvania Compensation Rating Bureau (the "PCRB"). The PCRB is a non-governmental organization charged with "the task of determining a system of risk classifications to be used in the computation of workmen's compensation insurance premium rates paid by employers." Commonwealth Ins. Dep't v. Colonial Gardens Nursing Home, 347 A.2d 770, 771 (Pa. Commw. Ct. 1975). It is not an administrative body designed to adjudicate contract claims

related to a workers' compensation policy.  See Maryland Casualty Co. v. Odyssey Contracting Corp., 894 A.2d 750, 755 (Pa. Super. Ct. 2006).   Liberty nonetheless cites Maryland Casualty as supporting its position that this Court lacks subject matter jurisdiction to consider Muskin's challenge to the policies because Muskin did not present its challenge to the PCRB.

In Maryland Casualty, the plaintiff sought payment of premiums owed under a workers' compensation insurance policy.  Id. at 753.  The defendants in the action filed a counterclaim asserting that Maryland Casualty "intentionally and knowingly applied an improper rate classification to calculate the exposures and to inflate the amount of premiums due."  Id. at 753.  The Superior Court of Pennsylvania affirmed the trial court's decision that the defendants were barred from pursuing their *counterclaim* because they did not challenge the rate classification before the Pennsylvania Compensation Rating Bureau.  Id. at 754-55 (citing Rule XVI from the Pennsylvania Workers Compensation Manual ("Appeals from Application of the Rating System Procedure")).  The court acknowledged, however, that the PCRB has "no authority to adjudicate a contracts dispute."  Id. at 755.

In this case, Muskin does not argue that Liberty used improper rates in calculating the premium and dividend adjustments; instead, it argues that Liberty cannot make indefinite retrospective adjustments under the terms of the 1994 Policy and that Liberty has not substantiated its premium adjustments.  (Def.'s Br. Opp. (Dkt. Entry 39) at 6-9.)  Consequently, this is a contract dispute, not a challenge to the PCRB rating system under Rule XVI of the

Pennsylvania Workers Compensation Manual (submitted as Ex. B to Liberty's Mot. Summ. J. (Dkt. Entry 62).). The PCRB lacks authority to consider such a contractual dispute, Maryland Casualty, 894 A.2d at 755, and Muskin was not required to present the dispute to the PCRB.

### C. Whether Liberty May Retrospectively Adjust Premiums Indefinitely

Muskin claims that Liberty has failed to establish that it was entitled to adjust premiums and dividends indefinitely under the 1994 Policy. Accordingly, Muskin argues, it did not breach the policy by failing to pay the 2003, 2004, and 2005 premium and dividend adjustments to the policy. Liberty maintains that it has established that Muskin breached its obligations under the policy.

Under Pennsylvania law, "[t]he fundamental objective of contract construction is to ascertain the intention of the parties." Z & L Lumber Co. of Atlasburg v. Nordquist, 502 A.2d 697, 700 (Pa. Super. Ct. 1985) (citing, among other cases, Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123, 1131 (3d Cir. 1969)). When the terms of a contract are clear and unambiguous, "[t]he intent of the parties is to be ascertained from the document itself." Hutchison v. Sunbeam Coal Corp., 519 A.2d 385, 390 (Pa. 1986). "Determining whether a contract is ambiguous is a question of law for the court." Leprino Foods Co. v. Gress Poultry, Inc., 379 F. Supp. 2d 659, 676 (M.D. Pa. 2005). "A contract is ambiguous if it is reasonably susceptible of different constructions and capable of being understood in more than one sense." Hutchison, 519 A.2d at 390. Courts, though, should not "distort the meaning of the

language or resort to a strained contrivance in order to find an ambiguity." Madison Const. Co. v. Harleysville Mut. Ins. Co., 735 A.2d 100, 106 (Pa. 1999).

In support of its motion for summary judgment, Liberty has submitted a "Retrospective Premium Endorsement," a "Dividend Redetermination Endorsement," and a "WC Dividend Plan Confirmation for Retrospective Policy" for the 1994 Policy.  (Compl. Ex. A1, B1 (Dkt. Entry 1).) With regards to premium calculation and payments, the "Retrospective Premium Endorsement" states:

> 1. We will calculate the retrospective premium using all loss information we have as of a date six months after the rating plan period ends and *annually thereafter*.
>
> 2. After the calculation of retrospective premium, you and we may agree that it is the final calculation. No other calculation will be made unless there is clerical error in the final calculation.
>
> 3. After each calculation of retrospective premium, you will pay promptly the amount due us, or we will refund the amount due you. Each insured is responsible for the payment of all standard premium and retrospective premium calculated under this endorsement.

(Retrospective Premium Endorsement, Compl. Ex. A1 (Dkt. Entry 1) at 2 (emphasis added).)

With regards to the dividend, the "Dividend Redetermination Endorsement" states:

> An initial computation of dividend shall be done following termination of the policy, and subsequent computations of dividends shall be done *annually thereafter*. A total of REFER TO RETRO ENDORSEMENT computations of the dividends shall be done.

> Upon any computation of dividends subsequent to the initial, if the redetermined dividend is greater than the dividend previously computed, the company shall immediately pay to the insured the additional dividend shown to be due, whereas, if the redetermined dividend is less than the dividend previously computed, the insured shall immediately refund the amount by which the dividends previously computed exceed the redetermined dividend.

(Dividend Redetermination Endorsement, Compl. Ex. A1 (Dkt. Entry 1) (emphasis added).)

The "Dividend Plan Confirmation For Retrospective Policy" states:

> Dividends are payable at the discretion of the Board of Directors and in conformity with all legal requirements. Dividends are normally paid approximately 10 months after expiration of the policy. . . .
>
> Dividend computations shall be done concurrently with retrospective adjustments. . . .
>
> Upon any computation of dividends subsequent to the initial, if the redetermined dividend is greater that [sic] the dividend previously computed, the company shall immediately pay the insured the additional dividend shown to be due, wheras [sic], if the redetermined dividend is less than the dividend previously computed, the insured shall immediately refund the amount by which the dividends previously computed exceed the redetermined amount.

(WC Dividend Plan Confirmation For Retrospective Policy, Compl. Ex. B1 (Dkt. Entry 1).)

A cursory review of these endorsements and the plan confirmation appears to indicate that premium adjustments and redetermined dividends are separate calculations; that is, the premium adjustments are set forth under the "Retrospective Premium Endorsement," and the dividend adjustments are set forth under the "Dividend Redetermination Endorsement" and the

"WC Dividend Plan Confirmation For Retrospective Policy." Indeed, Liberty lists separate premium, dividend, and refund check adjustments in the summary account statement accompanying its summary judgment motion. (Statement of Account, Aff. of Colette Viola Ex. 2 (Dkt. Entry 63).)

Both the premium and dividend endorsements state that adjustments will be made "annually thereafter," without stating a limit to the adjustments. (Compl. Ex. A1 (Dkt. Entry 1).) The plan confirmation states that "[d]ividend computations shall be done concurrently with retrospective adjustments." (Compl. Ex. B1 (Dkt. Entry 1).) It also contemplates multiple computations of dividends. (See id. (describing computations of "dividends subsequent to the initial").) There is no wording in the endorsements or plan confirmation suggesting a limit to premium adjustments. Under these circumstances, the only reasonable reading of the premium endorsement is that there is no numerical or time limit for retrospective premium adjustments.[6]

Indeed, the policy's language cannot be logically read to have any other meaning on this point. It is clear, for instance, that the policy does not set forth a set number of premium and dividend adjustments. Consequently, it would be impossible for the Court to ascertain a limit to

---

[6] It should be noted that the 1994 Policy does set restrictions on the value of adjustments to premiums and dividends. (Retrospective Premium Endorsement, Compl. Ex. A1 (Dkt. Entry 1) at 2.) For example, the "maximum factor" is 1.50. The parties have not addressed the implication of the "maximum factor" in relation to Liberty's claim. Specifically, the parties have not quantified the dollar value of the "maximum factor" and how it might relate to Liberty's claim for indefinite retrospective premium adjustments.

the number of adjustments without guesswork.  Perhaps acknowledging this point, Muskin suggests that the Court adopt the dividend recalculation limits stated in other policies. (Def.'s Br. Opp. (Dkt. Entry 69) at 8-9.)  For instance, the "WC Dividend Plan Confirmation" for the policies in effect from October 29, 1997 to October 29, 1998 state that a "total of 5 computations of the dividend shall be done." (Compl. Ex. B3 (Dkt. Entry 1).)  Muskin, however, has presented no extrinsic evidence that this is an industry norm or that the language of the 1994 Policy presents a latent ambiguity.[7]  See Bohler-Uddeholm America, Inc. v. Ellwood Group, Inc., 247 F.3d 79, 94 (3d Cir. 2001) ("A party may use extrinsic evidence to support its claim of latent ambiguity, but this evidence must show that some specific term or terms in the contract are ambiguous; it cannot simply show that the parties intended something different that was not incorporated into the contract.").  It should also be emphasized that the other policies limit the number of *dividend computations*, not *premium adjustments,* which make up the bulk of the money Liberty seeks.  It also seems unlikely that Liberty would agree to charge Muskin a reduced initial premium under these policies while limiting its ability to retrospectively adjust the premium based on actual losses.  For all these reasons, the Court rejects Muskin's argument that Liberty has failed to establish that it was entitled to adjust retrospectively the premiums and

---

[7]  Besides citing to the language of other policies, the only other evidence Muskin cites to is the deposition transcript of its corporate representative, Howard French (who was not employed by Muskin when it agreed to the 1994 Policy), who testified that he found the terms of the policy confusing and doubted that Muskin would agree to an undefined liability.  This testimony does little to show that Muskin intended to limit the number of adjustments to the 1994 Policy.

dividends indefinitely under the 1994 Policy.

### D.  Whether Liberty Has Presented Sufficient Evidence that it is Due $149,574

Muskin contends that Liberty has not presented sufficient evidence to support its claim that Muskin owes Liberty $149,574.  To support its damages claim, Liberty has filed an affidavit of Colette Viola, a Senior Receivables Analyst who has reviewed account records for Muskin. (Dkt. Entry 63-3.)  According to Viola, Muskin owes Liberty a total of $149,574 from amounts owed under the 1994 Policy as well as other policies.  Unfortunately, it is not possible to identify on the account statement any policy other than the 1994 Policy, as the account statement uses different policy numbers than the policies themselves.  Though Liberty has identified the 1994 Policy (policy number WC2-131-454679-014) as being listed on the account statement as WC2-131-454679-0194, (Viola Aff. (Dkt. Entry 63-3) ¶ 7), it has not identified any of the other policies listed on the statement.

Liberty, moreover, has presented almost no evidence as to how the amount it claims to be owed was calculated.  The only calculations Liberty provides are for the May 1, 2006 retrospective adjustment to the 1994 Policy, which was a refund.  (Viola Aff. Ex. 3 (Dkt. Entry 63-3).)  Liberty has presented no other evidence to verify the amounts that may be due under the policies.  Liberty, for instance, has not presented any documentation of claims that it has paid under the policies, or how the claims were used to calculate adjusted premiums and dividends.

Though the retrospective premium endorsement generally explains what "elements" will

13

be considered by Liberty in calculating a retrospective premium, the endorsements do not specifically show how the premium is calculated.  For example, the Retrospective Premium Endorsement attached as Exhibit 1 to the Complaint explains that Liberty will consider the standard premium, basic premium, incurred losses, a converted loss, and taxes as elements in calculating the premium, but doe not explain how these elements are used to compute the retrospective premium.  Indeed, Viola could not clearly explain how to calculate the claimed retrospective premiums from the language of the endorsements.  (Dep. of Colette Viola, Aff. Mark Hooper Ex. B (Dkt. Entry 66-2).)  The account statement accompanying her affidavit is certainly not adequate.  It is a summary, but there is no supporting documentation supporting the amounts claimed.  Moreover, the document is confusing.  For example, the account statement lists a "refund check" of $97,568 as an amount owed by Muskin without any explanation as to why it is treated as an obligation.  As noted above, no information has been presented as to any adjustments determined to be appropriate since May 1, 2006.

There simply is not sufficient evidence to find that Liberty is due the amount it seeks. Consequently, the Court must deny Liberty's motion for summary judgment.

An appropriate Order follows.

**s/ Thomas I. Vanaskie**
Thomas I. Vanaskie
United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **LIBERTY MUTUAL INSURANCE CO.** : | |
| Plaintiff : | |
| v. : | 3:CV-05-0253 |
| : | (JUDGE VANASKIE) |
| **MUSKIN LEISURE PRODUCTS, INC.,** : | |
| n/ka Zodiac American Pools, Inc., a : | |
| Delaware Corporation : | |
| Defendant : | |

## ORDER

**AND NOW, THIS 20th DAY OF AUGUST, 2007,** for the reasons set forth in the foregoing Memorandum, **IT IS HEREBY ORDERED THAT:**

1. Plaintiff's Motion for Summary Judgment (Dkt. Entry 62) is **DENIED**.

2. A telephonic scheduling conference will be conducted on **September 11, 2007, at 9:00 a.m.** Attorney Paul T. Oven is responsible for placing the call to 570-207-5720, and all parties shall be ready to proceed before the undersigned is contacted.

                                            **s/ Thomas I. Vanaskie**
                                            Thomas I. Vanaskie
                                            United States District Judge